**Fred W. FINCHER, Plaintiff,**

v.

**J. Brian SCOTT et al., Defendants.**

**Civ. A. No. C–148–R–72.**

United States District Court,
M. D. North Caolina,
Rockingham Division.

Heard Nov. 10, 1972.

Decided Dec. 12, 1972.

---

Norman B. Smith, Smith, Patterson, Follin & Curtis, Greensboro, N. C., for plaintiff.

Robert Morgan, Atty. Gen. of North Carolina, James F. Bullock, Deputy Atty. Gen. (Henry E. Poole, Associate Atty., North Carolina Dept. of Justice, Raleigh, N. C., on brief), for defendants.

Before CRAVEN, Circuit Judge, and GORDON and JONES, District Judges.

CRAVEN, Circuit Judge:

May one of the States of the Union constitutionally deny the franchise to convicted felons? We think so, and, for reasons to be stated, will direct the Clerk to enter judgment dismissing the complaint.

Plaintiff, a convicted felon, attempted to register to vote in Scotland County, North Carolina. He was refused the right to register because he was a convicted felon whose rights of citizenship had not been restored. Thereafter, he brought this action seeking declaratory and injunctive relief against the enforcement of North Carolina statutory and constitutional provisions depriving convicted felons of the right to vote.[1]

These provisions are attacked as being a denial of equal protection in violation of U. S. Const. amend. XIV, § 1, and cruel and unusual punishment in violation of U. S. Const. amend. VII.

## I.

The Constitution of North Carolina, art. VI, § 2(3) provides:

*Disqualification of felon:* No person adjudged guilty of a felony against this State or the United States, or adjudged guilty of a felony in another state that also would be a felony if it had been committed in this State, shall be permitted to vote unless that person shall be first restored to rights of citizenship in the manner prescribed by law.

N.C.Gen.Stat. § 163–55(3) provides:

The following classes of persons shall not be allowed to register or vote in this State:

. . . . . .

(3) Persons who have been convicted, or who have confessed their guilt in open court, upon indictment, of any crime the punishment for which now or may hereafter be imprisonment in the State's prison, unless he shall have had his rights of citizenship restored in the manner prescribed by law.

Holmes must have had in mind this sort of case when he penned his aphorism that the life of the law is not logic but experience. For an excellent example, indeed, the only example, of the equal protection logic of plaintiff's position, see Stephens v. Yeomans, 327 F.Supp. 1182 (D.N.J.1970). We admire the technique and would be persuaded by it but for what seems to us the compelling argument of history.

A contention that provisions of state law like those before us violate the Equal Protection Clause was also made in Green v. Board of Elections, 380 F.2d 445 (2d Cir. 1967).

Plaintiff places heaviest weight on the equal protection clause of the Fourteenth Amendment, relied upon in such landmark decisions as the apportionment cases, Baker v. Carr, 369 U.S. 186 [82 S.Ct. 691, 7 L.Ed.2d 663] (1962); Gray v. Sanders, 372 U.S. 368 [83 S.Ct. 801, 9 L.Ed.2d 821] (1963), and Reynolds v. Sims, 377 U.S. 533 [84 S.Ct. 1362, 12 L.Ed.2d 506] (1964); and the voter qualification cases, Carrington v. Rash, 380 U.S. 89 [85 S.Ct. 775, 13 L.Ed.2d 675] (1965),

---

1. It is before a three judge district court pursuant to the requirements of 28 U.S.C. §§ 2281 and 2284.

and Harper v. Virginia Board of Elections, 383 U.S. 663 [86 S.Ct. 1079, 16 L.Ed.2d 169] (1966). But none of those decisions intimates that the states are without power to continue their historic exclusion from the franchise of persons convicted of all or certain types of felonies. Even though the precise issue has not arisen before the Supreme Court, the propriety of excluding felons from the franchise has been so frequently recognized— indeed put forward by the Justices to illustrate what the states may properly do—that such expressions cannot be dismissed as unconsidered dicta.

380 F.2d at 451.

■ We think that a state may constitutionally continue the "historic exclusion" of felons from the franchise without regard to whether such exclusion can pass muster under the Equal Protection Clause. The U. S. Const. amend. XIV, § 2, provides in relevant part:

But when the right to vote at any election . . . is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced . . . .

Section 2 expressly allows the exclusion of felons from the franchise without reduction of representation. As early as 1873, it was stated:

This view is assumed in the second section of the fourteenth amendment, which enacts, that, if the right to vote for federal officers is denied by any state to any of the male inhabitants of such state, except for crime, the basis of representation of such state shall be reduced in a proportion specified. Not only does this section assume that the right of male inhabitants to vote was the especial object of its protection, but it assumes and admits the right of a state, notwithstanding the existence of that clause under which the defendant claims to the

contrary, to deny to classes or portions of the male inhabitants the right to vote which is allowed to other male inhabitants.

United States v. Anthony, 24 Fed.Cas. No. 14,459, pp. 829, 831 (C.C.N.D.N.Y. 1873). Recently this position has been restated.

The framers of the Amendment, says the Attorney General, could hardly have intended the general language of § 1 to outlaw a discrimination which § 2 expressly allowed without the penalty of reduced representation. The argument is convincing. We see nothing in the language or in history to support plaintiff's suggestion that "other crimes" meant only a crime connected with the rebellion. The Court's rejection of Mr. Justice Harlan's position that § 2 is the only portion of the Fourteenth Amendment dealing with voting rights, see Reynolds v. Sims, supra, 377 U.S. at 589 [84 S.Ct. 1362, 12 L.Ed.2d 506] in no way indicates it would deny that § 1 of the Amendment cannot be fairly read to prohibit a discrimination which § 2 expressly permits—especially in the light of the Justice's frequent and consistent statements approving voting disqualification for felony.

380 F.2d at 452. *Accord,* Kronlund v. Honstein, 327 F.Supp. 71 (N.D.Ga.1971); Beacham v. Braterman, 300 F.Supp. 182 (S.D.Fla.), aff'd without opinion, 396 U.S. 12, 90 S.Ct. 153, 24 L.Ed.2d 11 (1969). *Contra,* Stephens v. Yeomans, 327 F.Supp. 1182 (D.N.J.1970). Putting it positively, we think § 1 must be read in light of § 2, and, so read, denial of the franchise to felons is specifically excepted from the Equal Protection Clause contained in § 1.

While it may be more desirable from a correctional point of view to give felons the right to vote, Comment, 50 N.C.L. Rev. 903, 909–10 (1972), we are convinced the states are not constitutionally required to do so.

■ Plaintiff's other attack on the North Carolina provisions is that they

are cruel and unusual punishment. We likewise find this argument to be without merit.

> [E]leven state constitutions adopted between 1776 and 1821 prohibited or authorized the legislature to prohibit exercise of the franchise by convicted felons. Moreover, twenty-nine states had such provisions when the Fourteenth Amendment was adopted, and the total has now risen to forty-two. While it is true that "the words of the Amendment are not precise, and * * * their scope is not static," the great number of states excluding felons from the franchise forbids a conclusion that this is a "cruel and unusual punishment" within the context of "evolving standards of decency that mark the progress of a maturing society." Trop v. Dulles, 356 U.S. 86, at 101 [78 S.Ct. 590, at 598, 2 L.Ed. 2d 630].

380 F.2d at 450.

Accordingly, the relief sought in the complaint will be denied, and the complaint will be

Dismissed.