Fred THIESS, Jack Little, Edward Long, Lawrence Banks, Richard Lane, and Charlotte Lane

v.

**STATE ADMINISTRATIVE BOARD OF ELECTION LAWS, STATE OF MARYLAND and Baltimore City Board of Supervisors of Election.**

Civ. No. 72–1091–K.

United States District Court, D. Maryland.

Dec. 26, 1974.

Nelson R. Kandel, Baltimore, Md. for plaintiffs.

Francis B. Burch, Atty. Gen., of Md., George A. Nilson, Asst. Atty. Gen., of Md., Baltimore, Md., for defendants.

Before WINTER, Circuit Judge, and KAUFMAN and HARVEY, District Judges.

FRANK A. KAUFMAN, District Judge.

Plaintiffs, residents of the State of Maryland, all of whom have been convicted of and never pardoned for one or more crimes,[1] seek injunctive and declaratory relief against the Administrative Board of Election Laws of the State of Maryland and the Baltimore City Board of Supervisors of Elections, pursuant to 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343. Plaintiffs assert that the provisions of 3 Md. Ann.Code art. 33, §§ 3–4(c), 24–14, as amended, ch. 299, §§ 1–2 [1974] Laws of Maryland 1353–54,[2] violate the Equal Protection Clause of the Fourteenth

---

1. Plaintiffs, in answers to interrogatories posed by defendants, have stated respectively as follows:

Thiess has been convicted of petty larceny, unauthorized use of a motor vehicle, disorderly conduct (four convictions), possession of marijuana (misdemeanor), forging and uttering, and burglary.

Little has been convicted of auto larceny and burglary, escape, interstate transportation of a stolen car, possession of check paraphernalia and checks, carrying a deadly weapon, illegal purchase of morphine and Demerol, forgery, and false pretenses (two convictions).

Long has been convicted of disorderly conduct, driving while intoxicated, assault on an officer, and drunk driving.

Banks has been convicted of burglary, breaking and entering, and purchasing drugs.

Richard Lane has been convicted of storehouse breaking involving goods of a value under $100.00, possession of morphine, disorderly conduct, control of marijuana, assault by striking, sale of morphine, and possession of cocaine.

Charlotte Lane has been convicted of disorderly conduct (two convictions), failure to pay for a taxicab, possession of narcotics paraphernalia, possession of barbiturates, and failure to pay a motel bill.

2. Those statutes, as of the date of the filing of this opinion, provide in pertinent part:

3–4(c)

No person shall be registered as a qualified voter if he has been convicted of larceny or other infamous crime, unless he has been pardoned, or, in connection with his first such conviction only, he has completed any sentence imposed pursuant to that conviction, including any period of probation imposed by virtue of parole or otherwise in lieu of a sentence or part of a sentence.

* * * * *

24–14

If any person who shall have been convicted in this or any other state or any federal court of any infamous crime as defined in this State, and who is rendered ineligible to vote pursuant to § 3–4(c) of this article, who [sic] shall vote or offer to vote at any election in this State held at any time during which such person is not eligible to vote, he shall, upon conviction thereof be adjudged guilty of a felony. For each and every such offense, he shall be punished by imprisonment in the penitentiary for not less than one nor more than five years.

At the time plaintiffs instituted this suit, the Maryland law provided that:

§ 3–4. Qualifications.

(a) Qualified voters.—Only persons, constitutionally qualified to vote in the precinct or district, as the case may be, shall be registered as qualified voters.

(b) Constitutional qualifications.—The Constitutional qualifications of voters are the following; each one of which is applicable to every voter:

* * * * *

(5) Not convicted of larceny or infamous crime, unless pardoned by the Governor

* * * *.

§ 24–14. Voting by person who has lost civil rights.

If any person who shall have been convicted in this or any other state or any federal court of any infamous crime as defined in this State, and who has never received a pardon for such offense from the officer entitled to grant such pardon, shall thereafter vote or offer to vote at any election in this State, he shall, upon conviction thereof be adjudged guilty of a felony. For each and every such offense, he shall be punished by imprisonment in the penitentiary for not less than one nor more than five years.

Amendment because they single out certain convicted felons for the deprivation of the "fundamental" right to vote. Plaintiffs also allege that those Maryland statutory provisions are unconstitutional because they constitute cruel and unusual punishment inflicted upon those convicted of felonies, and further contend that those provisions are void for vagueness. Additionally, plaintiffs contend that those statutes have been arbitrarily and thus unconstitutionally administered. Defendants have filed a motion to dismiss which, because the record contains affidavits and discovery documents in addition to pleadings, has been converted to a motion for summary judgment under Federal Civil Rules 12(b) and 56. That motion was held *sub curia* by this three-judge Court, empanelled pursuant to 28 U.S.C. §§ 2281, 2284, pending the filing by the Supreme Court of the United States of its opinion in Richardson v. Ramirez, 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974).

## I.

Before dealing with the substantive constitutional issues posed herein, this Court notes at the outset that serious justiciability problems exist as to all but one of the plaintiffs. Plaintiffs Charlotte Lane, Banks and Little have apparently been convicted for offenses which constitute "infamous" crimes[3] disqualifying them from voter eligibility at the time this suit was instituted. However, none of those plaintiffs claim to have ever attempted to register to vote, and for that reason may not be persons who have yet been deprived of their right to vote. Moreover, under the

3. The term "infamous crimes", while never statutorily defined by the Maryland legislature, has been illumined somewhat by two opinion letters issued by the Office of the Attorney General of the State of Maryland, respectively dated June 20, 1973 and October 2, 1973, to which have been appended "Instructions of the Attorney General for the Use of Officers of Registration and Election". Attached thereto are lists classifying as "infamous" the following crimes:

Abduction of a female under 18 or a child under 12.
Arson, including burning of church, public building, etc.
Assault with intent to have carnal knowledge of a female child under the age of 14 years.
Assault with intent to rob, rape or murder.
Attempting to poison person; poisoning or contaminating water, drink, food or food products.
Bigamy.
Breaking and entering, and storehouse breaking (where a felony).
Breaking head or other portion of a tobacco hogshead with intent to evade laws relating to the inspection of tobacco.
Bribery.
Burglary.
Buying and Selling Votes.
Carnal knowledge of female under 14 years of age.
Carrying weapons aboard aircraft.
Child abuse.
Counterfeiting.
Dynamiting, etc., of property.
Embezzlement.
Escaping from penitentiary, etc., or assisting escape.
Forgery.
Incest.
Injuring, etc., of race horse, etc.
Intentional injury to or interference with property, with grounds to believe that such act will hinder preparation for or prosecution of war by the United States, etc.
Kidnapping.
Larceny.
Manslaughter.
Mayhem.
Murder.
Narcotics violation (where a felony).
Perjury, including subornation of perjury.
Rape.
Receiving stolen goods (where a felony).
Robbery.
Sending, delivering, etc., threatening letter, etc.; threatening verbally.
Shoplifting—value of $100.00 or upwards.
Sodomy.
Treason.
Use of machine gun for crime.
Various offenses relative to prostitution. [3 Md.Code Ann. art. 27, §§ 428–432 (1971 Replacement Vol.).]

Defendants have informed this Court that those lists are "all inclusive" except that "[i]f a' prospective registrant indicates a prior Maryland conviction of a crime which does not specifically appear on the list", that registrant may be denied registration if "such denial is first approved by the Attorney General's office."

1974 amendments to Maryland's voter registration law, plaintiffs Charlotte Lane and Banks would appear now entitled to register. Plaintiff Richard Lane has not only never attempted to register to vote, but has not alleged that the offenses for which he has been convicted disqualified him from voter eligibility even under the more restrictive provisions of state law existing at the time this case was instituted. Plaintiff Long does assert that he has previously attempted to register as a Maryland voter. However, it is not clear that either under the previous law or under the law as recently amended Long is disqualified from registering to vote. Plaintiff Thiess asserts that he was on at least one occasion denied the opportunity to register as a voter. Thiess has been convicted of two "infamous" crimes, forgery and burglary. Since Thiess has never been pardoned by the Governor of Maryland, he is seemingly presently ineligible to vote in the State of Maryland. Accordingly, as to Thiess, a justiciable controversy exists, at the least in the context of defendants' pending motion for summary judgment in which all factual inferences must be assumed in favor of plaintiffs.

## II.

■ The contention that the Maryland statutes depriving convicted felons of their right to vote contravene the mandates of the Equal Protection Clause of the Fourteenth Amendment has been fully answered by the Supreme Court's decision in Richardson v. Ramirez, *supra*. In that case, the Supreme Court (418 U.S. at 34, 94 S.Ct. at 2658, 41 L. Ed.2d at 556) upheld the provisions of

the California Constitution and of California's implementing statutes disenfranchising persons convicted of infamous crimes. In his opinion in that case, Mr. Justice Rehnquist wrote (418 U.S. at 54, 94 S.Ct. at 2671, 41 L.Ed.2d at 571) that "the exclusion of felons from the vote has an affirmative sanction in § 2 of the Fourteenth Amendment," and held (418 U.S. 56, 94 S.Ct. at 2671, 41 L.Ed.2d at 572)

> * * * that the Supreme Court of California erred in concluding that California may no longer, consistent with the Equal Protection Clause of the Fourteenth Amendment, exclude from the franchise convicted felons who have completed their sentences and paroles.[4]

Plaintiffs' counsel has candidly conceded that Richardson v. Ramirez represents the final word upon the Equal Protection claim now before this Court. That concession is compelled.

## III.

■ Plaintiffs also claim, as indicated above, that the felon disqualification procedures of Maryland law constitute "cruel and unusual punishment." In his concurring opinion in Furman v. Georgia, 408 U.S. 238, 282, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), in which the Supreme Court held the death penalty as then administered proscribed by the Eighth Amendment, Mr. Justice Brennan observed:

> Since the Bill of Rights was adopted, this Court has adjudged only three punishments to be within the prohibition of the Clause. See Weems v. United States, 217 U.S. 349, [30 S.Ct.

4. Section 2 of the Fourteenth Amendment provides that:

Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed. But *when the right to vote* at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members

of the Legislature thereof, *is denied* to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, *except for participation in rebellion, or other crime*, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State. [Emphasis supplied.]

544, 54 L.Ed. 793] (1910) (12 years in chains at hard and painful labor); Trop v. Dulles, 356 U.S. 86 [78 S.Ct. 590, 2 L.Ed.2d 630] (1958) (expatriation); Robinson v. California, 370 U.S. 660, [82 S.Ct. 1417, 8 L.Ed.2d 758] (1962) (imprisonment for narcotics addiction). * * *

Among the cases cited by Mr. Justice Brennan, only Trop v. Dulles would appear arguably to buttress plaintiffs' contention that political disenfranchisement is unconstitutional as "cruel and unusual punishment." In *Trop*, Mr. Chief Justice Warren concluded (356 U.S. at 103, 78 S.Ct. at 599) "that the Eighth Amendment forbids Congress to punish by taking away citizenship" and indicated (at 101, 78 S.Ct. at 598) that the Eighth "Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society."

Unlike the penalty of expatriation, the penalty of disenfranchisement is one specifically recognized by the Fourteenth Amendment, an amendment enacted subsequent to the Eighth. *See* Richardson v. Ramirez, *supra* 418 U.S. at 54, 94 S.Ct. at 2671, 41 L.Ed.2d at 571. In addition, Mr. Chief Justice Warren's words in *Trop* suggest a marked difference in severity between total political expatriation and the more limited deprivation of the right to vote. Of expatriation, the then Chief Justice wrote (356 U.S. at 101–102, 78 S.Ct. at 598):

* * * There may be involved no physical mistreatment, no primitive torture. There is instead the total destruction of the individual's status in organized society. It is a form of punishment more primitive than torture, for it destroys for the individual the political existence that was centuries in the development. The punishment strips the citizen of his status in the national and international political community. His very existence is at the sufferance of the country in which he happens to find himself. While any one country may accord him some rights, and presumably as long as he remained in this country he would enjoy the limited rights of an alien, no country need do so because he is stateless. Furthermore, his enjoyment of even the limited rights of an alien might be subject to termination at any time by reason of deportation. In short, the expatriate has lost the right to have rights.

This punishment is offensive to cardinal principles for which the Constitution stands. It subjects the individual to a fate of ever-increasing fear and distress. He knows not what discriminations may be established against him, what proscriptions may be directed against him, and when and for what cause his existence in his native land may be terminated. He may be subject to banishment, a fate universally decried by civilized people. He is stateless, a condition deplored in the international community of democracies. It is no answer to suggest that all the disastrous consequences of this fate may not be brought to bear on a stateless person. The threat makes the punishment obnoxious. [Footnotes omitted.]

As the Court noted in Richardson v. Ramirez (418 U.S. at 55, 94 S.Ct. at 2671, 41 L.Ed.2d at 571), it may be that modern legislators should conclude that the concept of disenfranchisement is "outmoded, and that the more modern view is that it is essential to the process of rehabilitating the ex-felon that he be returned to his role in society as a fully participating citizen when he has completed the serving of his term." Be that as it may, as a Court, we cannot conclude that such disenfranchisement as has been decreed by the State of Maryland is a punishment so grossly disproportionate to the crime as to be proscribed by the Eighth Amendment.[5]

---

5. *See* Hart v. Coiner, 483 F.2d 136 (4th Cir. 1973), cert. denied, 415 U.S. 938, 94 S.Ct. 1454, 39 L.Ed.2d 495 (1974).

## IV.

Plaintiffs claim that the statutes in question are void for vagueness. In the context of that contention the question arises as to whether an *attempt* by an ineligible convicted felon *to register* to vote constitutes, in and of itself, an offense under section 24–14 of amended Article 33 of the Annotated Code of Maryland. However, the Attorney General of Maryland has specifically informed this Court that the statute does not, in the Attorney General's opinion, so provide and that the statute is enforced in practice in accordance with the Attorney General's interpretation of it. Although this Court is not required to accept that statutory construction, this Court does so since that construction appears correct and in accord with common sense. Accordingly, there is no basis for concluding that any ex-convict who merely *attempts to register* will put himself in jeopardy of prosecution.

Additionally, however, the question arises as to whether the term "infamous crime" itself is so vague that it offends the "notions of fair notice or warning" to defendants and fails to provide the "reasonably clear guidelines for law enforcement officials and triers of fact" referred to by Mr. Justice Powell in Smith v. Goguen, 415 U.S. 566, 572–573, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974).[6] That can hardly be said of the Maryland statutes in question in this case in view of the currently existing "laundry list" of crimes issued by the Attorney General.[7]

## V.

Finally, plaintiffs assert that by their arbitrary and uneven administration of the registration laws, Maryland's authorities have discriminated against the "status-poor and powerless". Construed liberally, plaintiffs' complaint alleges both that (1) registrars have allowed certain perferred classes of convicted felons to become registered voters, while discriminating against plaintiffs; and that (2) the Governor of Maryland has improperly exercised his pardon power, invoking it in favor of certain preferred classes of felons, while denying it arbitrarily to politically disfavored groups. Such contentions are by no means facially frivolous. Indeed, the Supreme Court, because of the pendency of such a challenge in Richardson v. Ramirez, remanded that case to the Supreme Court of California for further proceedings. But in this case plaintiffs have failed to allege or produce in the face of defendants' motion a scintilla of evidence to support their "arbitrary and uneven administration" claim. Their conclusory, wholly unsupported allegations of unequal statutory application thus may not survive that motion.[8]

## VI.

For the reasons stated herein, defendants' motion for summary judgment is hereby granted. It is so ORDERED.

---

6. With further regard to the concept of "vagueness", see Dombrowski v. Pfister, 380 U.S. 479, 494, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); Cox v. Louisiana, 379 U.S. 559, 562, 568–569, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). *See also* United States v. National Dairy Products Corp., 372 U.S. 29, 32–33, 83 S.Ct. 594, 598, 9 L.Ed.2d 561 (1963), in which Mr. Justice Clark wrote:

Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed. * * *

*See generally* Note, *The Void-for-Vagueness Doctrine in the Supreme Court*, 109 U.Pa. L.Rev. 67, 68–69 (1960).

7. See n. 3 *supra*.

8. *See generally* Fletcher v. Hook, 446 F.2d 14, 15–16 (3d Cir. 1971); Guedry v. Ford, 431 F.2d 660, 664 (5th Cir. 1970); Picking v. State Finance Corp., 332 F.Supp. 1399, 1402–1403 (D.Md.), aff'd, 450 F.2d 881 (4th Cir. 1971), cert. denied, 405 U.S. 931, 92 S.Ct. 987, 30 L.Ed.2d 806 (1972).