**Gary ALLEN, Plaintiff,**

v.

**James B. ELLISOR, Defendant.**

**Civ. A. No. 75–1411.**

United States District Court,
D. South Carolina,
Aiken Division.

June 13, 1979.

---

Laughlin McDonald, Neil Bradley, Atlanta, Ga., Armand Derfner, Charleston, S. C., for plaintiffs.

1. Section 7–5–120(proviso)(5)(b) provides: "Persons convicted of burglary, arson, obtaining goods or money under false pretenses, perjury, forgery, robbery, bribery, adultery, bigamy, wife-beating, housebreaking, receiving stolen goods, breach of trust with fraudulent intent, fornication, sodomy, incest, assault with intent to ravish, larceny, murder, rape or crimes against the election laws shall be disqualified from being registered or voting, unless such disqualification shall have been removed by pardon."

2. Forgery is classified as a felony under provisions of Section 16–1–10, S.C.Code, 1976, anno. (It was a felony under Section 16–11, S.C.Code, 1962, anno., and considered to be so at common law by the courts of South Carolina.)

Treva G. Ashworth, Asst. Atty. Gen., Columbia, S. C., for James B. Ellisor.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (AND REFUSING DEFENDANTS' SUMMARY JUDGMENT MOTION)

HEMPHILL, District Judge.

Before the court are cross motions for summary judgment involving the constitutionality of § 7–5–120(5)(b), South Carolina Code, 1976, anno., a portion of the State's disfranchisement law.[1]

Plaintiff is a resident of Aiken County, South Carolina. On May 21, 1970, he was convicted in state court of the crime of forgery[2] and was thereafter notified by the Board of Registration of Aiken County that by operation of § 7–5–120 (Proviso) (5)(b) he was disqualified from being registered or voting in South Carolina. His name was removed from the list of registered voters. He thereafter commenced this class action against the members of the Board of Registration of Aiken County and the Executive Director of the South Carolina Election Commission.[3] He claims that the State's disfranchising statute is unconstitutional and seeks a declaration that it unlawfully deprives him of the right to vote.[4]

On September 30, 1975, this court entered an order allowing the case to proceed as a class action on behalf of all persons denied the right to vote by operation of the statute. In subsequent orders filed on October

3. By order of July 14, 1978, pursuant to a stipulation of the parties, the proceedings were dismissed as to the Board of Registration leaving the Executive Director of the South Carolina Election Commission as the sole party defendant.

4. The plaintiff originally sought injunctive relief and the convening of a three-judge court. However, he subsequently withdrew his claim for an injunction, and pursuant to stipulation of the parties, this court entered an order on August 23, 1978, amending the complaint by striking the prayer for injunctive relief and the request for a three-judge court.

16, 1978, the court directed that notice of the pendency of the action be given to members of plaintiff's class. Notice was duly given in conformity with such orders and the case was heard on February 15, 1979. The court now concludes that § 7–5–120(Proviso)(5)(b) impermissibly abridges the right to vote.

 Because the right to vote is fundamental and preservative of other civil and political rights, *Yick Wo v. Hopkins*, 118 U.S. 356, 370, 6 S.Ct. 1064, 30 L.Ed. 220 (1886),[5] any restrictions on that right are subject to close scrutiny. While ordinary state laws which are selective may be upheld upon a showing that there is a "rational relation" between the selection and a legitimate state policy, distinctions in the right to vote require a showing that the distinction is *necessary* to promote a *compelling* state interest. In *Kramer v. Union Free School District No. 15 et al.*, 395 U.S. 621, 627, 89 S.Ct. 1886, 1889, 23 L.Ed.2d 583, 589:[6]

> Statutes granting the franchise to residents on a selective basis always pose the danger of denying some citizens any effective voice in the governmental affairs which substantially affect their lives.

> Therefore, if a challenged state statute grants the right to vote to some bona fide residents of the requisite age and citizenship and denies the franchise to others, the court must determine whether the exclusions are necessary to promote a compelling state interest. See *Carrington v. Rash*, 380 U.S. 89, 96 [, 85 S.Ct. 775, 13 L.Ed.2d 675] (1965).

> And, for these reasons, the deference usually given to the judgment of legislators does not extend to decisions concerning which resident citizens may participate in the election of legislators and other public officials. Those decisions must be carefully scrutinized by the Court to determine whether such resident citizen has, as far as is possible, an equal voice in the selections. Accordingly, when we are reviewing statutes which deny some residents the right to vote, the general presumption of constitutionality afforded state statutes and the traditional approval given state classifications if the Court can conceive of a "rational basis" for the distinctions made are not applicable. See *Harper v. Virginia Bd. of Elections*, 383 U.S. 663, 670 [, 86 S.Ct. 1079, 16 L.Ed.2d 169] (1966). The presumption of constitutionality and the approval given "rational" classifications in other types of enactments are based on an assumption that the institutions of state government are structured so as to represent fairly all the people. However, when the challenge to the statute is in effect a challenge of this basic assumption, the assumption can no longer serve as the basis for presuming constitutionality.

Quoting *Reynolds v. Sims*, 377 U.S. 533, 562, 84 S.Ct. 1362, 1381, 12 L.Ed.2d 506, 527 (1964) the *Kramer* court ruled:

> [S]ince the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized. [395 U.S. 626, 89 S.Ct. 1889, 23 L.Ed.2d 589].

This court employs such scrutiny in considering the statute before it.

*Also see Dunn v. Blumstein*, 405 U.S. 330, 336, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), and *O'Brien v. Skinner*, 414 U.S. 524, 533, 94 S.Ct. 740, 38 L.Ed.2d 702 (1974). The South Carolina disfranchising provision cannot meet this test.[7] Indeed, in this case the

---

**5.** This case involved a municipal ordinance of the City of San Francisco prohibiting the use of wooden buildings in the operation of a laundry.

**6.** This case involved a bachelor denied eligibility to vote in a New York School District election because he neither owned property nor had parenthood (or custody) as required by a New York statute; because of its discriminato-

ry nature the statute was declared unconstitutional.

**7.** It is true that in *Rosario v. Rockefeller*, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973), the Supreme Court apparently did not use the compelling interest test, but the Court pointed out that the case involved only an administrative time deadline for registering to vote. Since the plaintiffs there had simply chosen not to regis-

difference between the "compelling interest" test and the "rational basis" test is academic, because this statute cannot meet either test. The State concedes as much, for it does not advance any such interest to justify application of the statute and the court finds that none in fact exists.

A simple glance at the crimes that are listed in § 7–5–120(Proviso)(5)(b) and those that are not, reveals what a kaleidoscopic quilt is portrayed. For one thing, the law discriminates among persons convicted of crimes of the same magnitude. Beating one's wife [8] disfranchises; beating a stranger, or a son or a daughter does not. Breaking into a house disfranchises; breaking into a car does not. Robbing a person disfranchises; kidnapping him does not. The capriciousness which flows from the statute is patent. This type of discrimination was what led the Supreme Court to strike down an Oklahoma law that provided for sterilization of a three-time offender but excluded certain crimes. The court noted that larceny was covered by the statute but embezzlement (which carried an equal sentence) was not, and held the statute unconstitutional:

> When the law lays an unequal hand on those who have committed intrinsically the same quality of offense and sterilizes one and not the other, it has made as invidious a discrimination as if it had selected a particular race or nationality for oppressive treatment.

*Skinner v. Oklahoma,*[9] 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942).

The inequality of § 7–5–120(Proviso)(5)(b) is not limited to the way in which it picks and chooses among crimes of the same magnitude. Inequity also results from the statute's inclusion of much lesser offenses as fornication and wife beating,[10] while excluding serious crimes like manslaughter, kidnapping, and all manner of conspiracies. The man who beats his wife is disfranchised; the man who kills his wife in sudden heat and passion is not. The person who kidnaps another can vote, while the person who has consensual sex with another is to be disfranchised. As to persons convicted of such crimes the statute is particularly irrational and invidious.

While States have freedom to classify offenses as to seriousness, the *Skinner* decision shows that the classifications are meant to be taken seriously, and that states are not free to pick and choose different classifications, at random for different purposes. Once the State has classified offenses (for example, according to whether they are felonies or misdemeanors or according to the length of sentence) it may not haphazardly pick and choose for other purposes without showing a rational basis or (as in this case involving the right to vote) a compelling interest in doing so. Compare *Roberts v. Collins,* 544 F.2d 168 (4th Cir. 1976), where the Fourth Circuit held it unconstitutional to impose greater punishment for a lesser included offense than may be imposed for the greater offense. See also *Davis v. Davis,* 585 F.2d 1226 (4th Cir. 1978); *Weems v. United States,* 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910).

Another district court has recently struck down a disfranchising statute because of

---

ter in time, they were not entitled to the protection of the cases (such as *Kramer*) which struck down statutes which "totally denied the electoral franchise to a particular class of residents." 410 U.S. at 757, 93 S.Ct. at 1249.

**8.** Of course, one must take into consideration the traditional regard for the feminine, preserved and heralded by generations of courteous conduct. Beating one's wife is/was serious in South Carolina, and long before woman's lib came to haunt state legislatures.

**9.** The Supreme Court here held unconstitutional an Oklahoma statute providing for steriliza-

tion of habitual criminals, defined as persons convicted of two or more crimes, the inequalities of the statute being apparent on its face because of the classifications of various crimes as included or exempt. The court held the statute discriminatory and violative of the Equal Protection Clause of the Constitution.

**10.** But wife beating is neither a common law nor a statutory offense in South Carolina. One convicted of assault and battery where the victim is his wife, however, is subject to disfranchisement under § 7–5–120(Proviso)(5)(b).

the nature of the crimes selected. In *Stephens v. Yeomans*, 327 F.Supp. 1182 (D.N.J. 1970), a New Jersey statute was struck down for its irrational selection of disfranchising crimes. The court there gave a number of examples and, referring to the fact that thieves are disfranchised while receivers of stolen property are not, reached back to Dickens' *Oliver Twist* and said "it is hard to understand why Bill Sikes should be ineligible for the franchise and Fagan eligible."

The Court concludes that South Carolina's list of disfranchising crimes is so discriminatorily selected that it is unconstitutional as a violation of equal protection.

■ Disfranchisement statutes, of course, are not *per se* unconstitutional. In *Richardson v. Ramirez*, 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974), the Supreme Court held that a statute disfranchising felons was authorized by Section 2 of the Fourteenth Amendment. The facts and claims in this case are fundamentally different. This case involves unconstitutional discrimination in selecting which crimes shall disfranchise and which shall not. Such an attack was specifically left open in *Richardson*, where the Court upheld California's right to disfranchise for felony convictions, but remanded for further proceedings to determine whether a lack of uniform application constituted a separate denial of equal protection.[11] In the cases upon which the State principally relies the courts were similarly addressing themselves to the constitutionality of disfranchising for felony or infamous crime. They thus provide no controlling guidance to resolution of the equal protection claims presented here. *See Fincher v. Scott*, 352 F.Supp. 117 (M.D. N.C.1972), *aff'd*, 411 U.S. 961, 93 S.Ct. 2151, 36 L.Ed.2d 681 (1973); *Beacham v. Braterman*, 300 F.Supp. 182 (S.D.Fla.1969), *aff'd*, 396 U.S. 12, 90 S.Ct. 153, 24 L.Ed.2d 11 (1969); *Shepherd v. Trevino*, 575 F.2d 1110 (5th Cir. 1978); *Kronlund v. Honstein*, 327 F.Supp. 71 (N.D.Ga.1971); *Thiess v. State*

*Administrative Board*, 387 F.Supp. 1038 (D.Md.1974).

Finally, the court notes that the State makes no argument that ruling the disfranchising statute unconstitutional would have significant or adverse impact upon the electoral system. The number of persons disfranchised by the statute is relatively small, so that their restoration to the voting rolls will present little administrative disruption or burden.

■ For the reasons stated, this court decrees that S.C.Code § 7–5–120(Proviso)(5)(b) is unconstitutional, and further decrees that persons who have been convicted of any of the crimes listed in this statute are entitled to register and vote if otherwise qualified under state law.

Defendant is also directed to take all necessary steps to provide notice of this decision to all members of the class and to notify registration officials, stricken voters and potential applicants that conviction of a crime is not a disqualifying ground for registration. The form of notice shall be by mail and publication in the same manner as this court directed for the earlier notice in this case. See Order of August 23, 1978.

Plaintiff, as prevailing party, is entitled to recover his costs, including cost of giving notice previously required by the court, and reasonable attorneys' fees. 42 U.S.C. §§ 1973*l*(e) and 1988. Plaintiff is instructed to file his request for a specific amount, together with supporting affidavits and memorandum, within ten days from the date of this Order, and the defendant shall have ten days after service thereof within which to respond.

The Office of the Attorney General of South Carolina has asked that the effective date of this order be delayed until appeal from this finding (indicated by the court at the oral hearing on the summary judgment motions) to the United States Fourth Circuit Court of Appeals. Plaintiff's counsel, by letter, has informed the court that he

---

11. On remand, the question was rendered moot by the adoption of new state regulations requiring uniform application. *Ramirez v. Brown*, 12 Cal.3d 912, 117 Cal.Rptr. 562, 528 P.2d 378 (1974).

does not object to such a provision in the order. Accordingly, the effective date of this order is delayed until remittitur is forwarded from the appellate court to this court, if the order is appealed, otherwise to take effect thirty (30) days from the date of this order in accordance with Rule 4, Federal Rules of Appellate Procedure.

Plaintiff's motion for summary judgment is granted. Defendant's motion for summary judgment is denied.

AND IT IS SO ORDERED.