George Earl PERRY, Plaintiff,

v.

Betsy Davis BEAMER, Secretary of the Commonwealth of Virginia, Defendant.

No. 2:96cv265.

United States District Court, E.D. Virginia, Norfolk Division.

July 23, 1996.

George Earl Perry, Suffolk, VA, for plaintiff.

James Walter Hopper, Office of Attorney General–VA, Richmond, VA, for defendant.

### ORDER AND OPINION

DOUMAR, District Judge.

This matter comes before the Court on a motion by the defendant, Betsy Davis Beamer ("Beamer"), to dismiss this action because of the plaintiff's failure to state a claim upon which this Court can grant relief. *See* Fed. R.Civ.P. 12(b)(6). For the following reasons, the Court **GRANTS** the defendant's motion.

### I.

■ When deciding a motion brought pursuant to Rule 12(b)(6), the court assumes the truth of the allegations set forth in the complaint. *See Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992), *cert. denied*, 510 U.S. 828, 114 S.Ct. 93, 126 L.Ed.2d 60 (1993). The plaintiff, George Earl Perry ("Perry"), avers that he attempted to register to vote on December 13, 1995 in Suffolk, Virginia. Upon informing Suffolk's Registrar of Voting, Patsy P. Bremer ("Bremer"), of his felony conviction, however, Bremer denied him the opportunity to register to vote.

On December 29, 1995, Perry wrote to Beamer, Secretary of the Commonwealth, concerning his attempt to register. Beamer responded to Perry's letter, explaining that "[t]he United States Constitution recognizes states' authority to determine the qualification for voting in state and federal elections. The power of the states to deny the right to vote because of conviction is expressly recognized in the Fourteenth Amendment, Section 2." Perry, thereafter filed this action seeking declaratory and injunctive relief.

### II.

The plaintiff contends that, by denying convicted felons the right to vote, the Constitution of Virginia violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[1] Perry bases this contention on the fact that, like all Americans—felons and nonfelons—are required to do, he pays his taxes. In effect, Perry claims that, as a felon, he suffers "taxation without representation."

Perry concludes that amending the United States Constitution would provide the only constitutional method by which felons can lose their right to vote. Based on this conclusion, the plaintiff asks this Court to declare unconstitutional Article II, § 1 of the Constitution of Virginia.[2] Perry, thereafter, would require an order from this Court enjoining the Commonwealth of Virginia from disenfranchising him and other felons in state and federal elections.

---

1. The Fourteenth Amendment reads as follows:

   Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any persons of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

   Section 2. Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, *except for participation in rebellion, or other crime,* the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

   U.S. Const.amend. XIV (1868) (emphasis added). The plaintiff also argues that his disenfranchisement violates the Due Process Clause. Despite this argument, the case law reviewed *infra* makes it clear that the plaintiff's allegations should be analyzed under equal protection jurisprudence.

2. The Constitution of Virginia states, in pertinent part, as follows: "No person who has been convicted of a felony shall be qualified to vote unless his civil rights have been restored by the Governor or other appropriate authority." Va. Const. art. II, § 1 (1971).

### A.

The question of whether the Equal Protection Clause prohibits the States from disenfranchising felons arose repeatedly in the late 1960s and early 1970s. Nearly every court considering the question held that the States were well within their constitutional boundaries to prohibit felons from voting. *See, e.g., Fincher v. Scott,* 352 F.Supp. 117, 119 (M.D.N.C.1972), *aff'd* 411 U.S. 961, 93 S.Ct. 2151, 36 L.Ed.2d 681 (1973) (three-judge District Court panel) ("We think that a state may constitutionally continue the 'historic exclusion' of felons from the franchise without regard to whether such exclusion can pass muster under the Equal Protection Clause."); *Kronlund v. Honstein,* 327 F.Supp. 71, 73 (N.D.Ga.1971) (three-judge District Court panel) ("A State has an interest in preserving the integrity of her electoral process by removing from the process those persons with proven anti-social behavior whose behavior can be said to be destructive of society's aims."); *Beacham v. Braterman,* 300 F.Supp. 182, 184 (S.D.Fla.), *aff'd,* 396 U.S. 12, 90 S.Ct. 153, 24 L.Ed.2d 11 (1969) (three-judge District Court panel) (holding that "a state may constitutionally exclude from the franchise persons otherwise qualified to vote who have been convicted of a felony"); *Green v. Bd. of Elections of City of New York,* 380 F.2d 445, 451 (2d Cir.1967), *cert. denied,* 389 U.S. 1048, 88 S.Ct. 768, 19 L.Ed.2d 840 (1968) (noting the Supreme Court's repeated expressions—"expressions [that] cannot be dismissed as unconsidered dicta"—that the States may exclude felons from the franchise). One court, however, found that New Jersey's specific practice of disenfranchisement violated equal protection. *See Stephens v. Yeomans,* 327 F.Supp. 1182, 1188 (D.N.J.1970) (three-judge District Court panel) (holding that New Jersey's disenfranchisement statute violated the Equal Protection Clause because of its "totally irrational and inconsistent classification" of crimes that gave rise to disenfranchisement). *But see Fincher,* 352 F.Supp. at 118 ("We admire the technique [of *Stephens*] and would be persuaded by it but for what seems to us the compelling argument of history.").

The Supreme Court's authoritative decision in *Richardson v. Ramirez,* 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974) effectively "closed the door on the equal protection argument in a challenge to state statutory voting disqualification for conviction of crime." *Allen v. Ellisor,* 664 F.2d 391, 395 (4th Cir.) (en banc), *vacated on other grounds,* 454 U.S. 807, 102 S.Ct. 80, 70 L.Ed.2d 76 (1981). Writing for the Court, then-Justice Rehnquist explained that "the understanding of those who adopted the Fourteenth Amendment, as reflected in the express language of § 2 and in the historical and judicial interpretation of the Amendment's applicability to state laws disenfranchising felons, is of controlling significance in distinguishing such laws from those other state limitations on the franchise which have been held invalid under the Equal Protection Clause by this Court." *Richardson,* 418 U.S. at 54, 94 S.Ct. at 2671.

The Court in *Richardson* specifically rejected the respondents' argument that the Supreme Court's "decisions invalidating other state-imposed restrictions on the franchise as violative of the Equal Protection Clause require [the Court] to invalidate the disenfranchisement of felons as well." *Id.* at 54, 94 S.Ct. at 2670-71; *see, e.g., Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); (holding that Texas' primary election filing fee system violated equal protection) *Kramer v. Union Free School District,* 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969) (holding that New York's statute limiting the franchise to owners or lessees of taxable realty (or their spouses) and parents or guardians of children in public schools violated equal protection); *Cipriano v. City of Houma,* 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969) (holding that Louisiana's practice of giving only "property taxpayers" the right to vote in elections called to approve issuance of revenue bonds by municipal utility violated equal protection). The Court discounted this argument because of the "affirmative sanction in § 2 of the Fourteenth Amendment" that permitted the States to disenfranchise convicted felons. *Richardson,* 418 U.S. at 54, 94 S.Ct. at 2670-71. According to the Justices, the Fourteenth Amendment's express language

excepting from the franchise those involved "in rebellion, or other crime" means exactly what it says—the States may disenfranchise criminals. *Id.*

Since the Supreme Court's decision in *Richardson,* at least two courts in this Circuit have upheld efforts by individual states to disenfranchise criminals. *See, e.g., Allen,* 664 F.2d at 399 (reversing the district court's judgment that held South Carolina disenfranchisement law violative of equal protection); *Thiess v. State Administrative Bd. of Election Laws,* 387 F.Supp. 1038, 1041 (D.Md. 1974) (dismissing the plaintiff's claim that a Maryland statute disenfranchising those convicted of "infamous crimes" violated his right to equal protection); *see also Wilson v. Goodwyn,* 522 F.Supp. 1214, 1216 (E.D.N.C. 1981) ("Provisions in state statutes and constitutions which deny convicted felons the right to vote and hold office do not violate the various rights guaranteed by the Constitution of the United States."). Despite this impressive collection of authority arrayed against him, the plaintiff asks this Court to declare unconstitutional Article II, § 1 of the Constitution of Virginia and to enjoin state election officials from enforcing its provisions.

In his brief, the plaintiff repeatedly relies upon *U.S. Term Limits, Inc. v. Thornton,* — U.S. ——, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995). *Thornton,* however, has no bearing on the issue before this Court. The Court in *Thornton* held that the States, consistent with the Constitution, could not add to or alter the qualifications of their federal representatives. *Id.* at ——, 115 S.Ct. at 1866. In fact, none of the Justices—neither those in the majority nor those in the dissent—even cited to *Richardson,* the controlling authority in this case.

### B.

The Commonwealth of Virginia has long excluded convicted felons from the franchise. *See* Va. Const.Art. 3, § 14 (1830). Following the Confederacy's unsuccessful attempt to secede from the Union, Virginia eventually sought to regain representation in the United States Congress. On January 26, 1870, the Senate and the House of Representatives approved an "Act to admit the State of Virginia to Representation in the Congress of the United States" (the "Act"). Act of Jan. 26, 1870, c. 10, 16 Stat. 62. As a condition of readmitting the Old Dominion, the Act expressly provided

> [t]hat the Constitution of Virginia shall never be so amended or changed as to deprive any citizen or class of citizens of the United States of the right to vote who are entitled to vote by the Constitution herein recognized, *except as a punishment for such crimes as are now felonies at common law,* whereof they shall have been duly convicted under laws equally applicable to all the inhabitants of said State.

*Id.* (emphasis added). The readmission of Virginia to representation in Congress took place nearly two years *after* ratification of the Fourteenth Amendment to the United States Constitution. U.S. Const.amend. XIV (proposed June 13, 1866; ratified July 28, 1868). If the Framers of the Fourteenth Amendment had intended to preclude states like Virginia from disenfranchising their convicted felons, they remained silent. Moreover, the Amendment's Framers also remained silent as each of the Confederate States regained their representation in Congress subject to provisions similar, or identical, to those imposed upon Virginia. *See, e.g.,* Act of June 22, 1868, c. 69, 15 Stat. 72; Act of June 25, 1868, c. 70, 15 Stat. 73; Act of Feb. 1, 1870, c. 12, 16 Stat. 63; Act of Feb. 23, 1870, c. 19, 16 Stat. 67; Act of Mar. 20, 1870, c. 39, 16 Stat. 80; Act of July 15, 1870.

■ The plaintiff's complaint fails to state for what felony he was convicted. This minor omission, however, needs not detain the Court for long. Perry does admit in his complaint that he was convicted of a felony—this admission alone precludes him from stating a claim upon which the Court can grant relief. At least one of the respondents in *Richardson* was convicted of a crime (possession of heroin) not recognized by the common law in the 19th century as a felony. *Richardson,* 418 U.S. at 32 n. 9, 94 S.Ct. at 2660 n. 9. The Supreme Court, however, apparently gave no import to this distinction, and this Court shall do the same. *See Allen v. Ellisor,* 664 F.2d at 397–98 ("In short § 2 of

the [fourteenth] amendment immunizes any classification of disqualifying crimes, whether the classification is stated in terms of 'felonies' generally, or of some felonies, or of certain specified crimes."). The Court, therefore, **HOLDS** that Article II, § 1 of the Constitution of Virginia disenfranchising all persons "convicted of a felony" (unless the Governor or other authority restores their civil rights) comports with the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

### III.

For the foregoing reasons, the Court **GRANTS** the defendant's motion to dismiss the plaintiff's action pursuant to Rule 12(b)(6). The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to the plaintiff and counsel for the defendant.

Plaintiff is **ADVISED** that he may appeal from this final order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. Said written notice must be received by the Clerk within thirty (30) days from the date of this order.