**Charles R. HOLLEY, Plaintiff-Appellant,**

v.

**Reubin O'D. ASKEW, as Governor of the State of Florida and Bruce A. Smathers, as Secretary of State of the State of Florida, Defendants-Appellees.**

No. 77–1151.

United States Court of Appeals,
Fifth Circuit.

Nov. 8, 1978.

Charles R. Holley, pro se.

James D. Whisenand, Sp. Asst. Atty. Gen., Miami, Fla., for defendants-appellees.

Edward J. Atkins, President, The Florida Bar, Miami, Fla., Richard C. McFarlain, Asst. Dir.—Legal Affairs, Florida Bar, Tallahassee, Fla., for The Florida Bar.

Before WISDOM, GODBOLD and TJOFLAT, Circuit Judges.

10.  *See* H.R. 9622, S. 2389, S. 2094, 95th Cong., 2d Sess. (1978) (bills to abolish diversity jurisdiction).

PER CURIAM:

We affirm the judgment appealed from for the reasons given in the appended Memorandum Opinion and Order of the district court, which we adopt as our Opinion.

AFFIRMED.

APPENDIX

CHARLES R. HOLLEY, Plaintiff,

v.

REUBIN O'D. ASKEW, as Governor, et al., Defendants.

No. TCA 76–168.

United States District Court,
N. D. Florida,
Tallahassee Division.

Nov. 30, 1976.

MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO DISMISS

STAFFORD, District Judge.

In this action plaintiff seeks a declaratory judgment that an amendment to Article V, §§ 3, 10 and 11 of the Florida Constitution, providing for merit retention of state appellate judges, contravenes section 2 of the Fourteenth Amendment to the United States Constitution, Plaintiff's motion for a preliminary injunction restraining defendants from placing this amendment on the November 2, 1976, general election ballot was denied on October 7, 1976. The Court takes judicial notice of the fact that the amendment was subsequently approved by the voters at the general election. Presently before the Court is defendants' motion to dismiss.

The amendment at issue here provides for the Governor of Florida to fill all judicial vacancies at the appellate level by appointment. All judges so appointed are to be retained by receiving periodic approval from the electors. Plaintiff contends that the appointment of state judges violates the following provision of the Fourteenth Amendment:

Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

According to plaintiff, if he and other Florida voters are denied the opportunity to vote for state judges, the State of Florida will lose its representation in Congress. The appointment of judges is also said to violate the privileges and immunities clause, Article IV, section 2, and the equal protection clause, Amendment XIV, section 1.

Defendants respond in part that dismissal of this action is proper because it does not present a properly justiciable case. Defendants have raised serious issues in this regard, especially as to plaintiff's standing to sue and as to whether the enforcement of Amendment XIV, § 2 poses a political question committed to the discretion of the legislative branch of government. It has been held or suggested by other federal courts that this constitutional provision is not self-executing and does indeed present questions not properly determinable by the courts. *Sharrow v. Brown,* 447 F.2d 94 (2d Cir. 1971); *Lampkin v. Connor,* 123 U.S. App.D.C. 371, 360 F.2d 505 (1966); *Saunders v. Wilkins,* 152 F.2d 235 (4th Cir. 1945), *cert. denied,* 328 U.S. 870, 66 S.Ct. 1362, 90 L.Ed. 1640 (1946). However, the justiciability of plaintiff's claim need not be decided in the case at bar, because plaintiff clearly is not entitled to prevail on the merits.

APPENDIX—Continued

■ To uphold plaintiff's contentions, this Court would have to accept one of two untenable positions: (1) that the United States Constitution compels a state to make judicial positions elective rather than appointive; or (2) that a state is required by the United States Constitution to continue electing judges once it has made the initial decision to do so. Both arguments fly in the face of repeated statements by the Supreme Court that the regulation of state elections is wholly within the authority of the individual states. *Oregon v. Mitchell,* 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970); *Carrington v. Rash,* 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965). Intervention by the federal judiciary is appropriate only in cases involving invidious discrimination, *South Carolina v. Katzenbach,* 383 U.S. 301, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966); *Louisiana v. United States,* 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709 (1965); *Gomillion v. Lightfoot,* 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960), or violations of the one-man-one-vote rule, *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). One court has even gone so far as to assert that provision could be made "for the appointment of all State judges without violating any provision of the federal Constitution." *Holshouser v. Scott,* 335 F.Supp. 928 (M.D.N.C., 1971).

■ This Court agrees, at least as far as plaintiff's contentions are concerned, that the plan set up by the State of Florida for appointment and merit retention of appellate judges is constitutionally valid. First, plaintiff's concern about the possibility that Florida will be stripped of its congressional representation for limiting the right to vote for state judges is plainly chimerical in light of the fact that no one's right to vote has been taken away, even in the abstract. Florida voters still must approve the retention of all appellate judges under the amendment at issue. The only change from previous practice is that the judges' names will appear on the ballot in uncontested elections, the electors voting to approve or disapprove of each judge's performance in office. This change in the manner of holding or regulating elections is within the state's constitutional prerogative.

■ Secondly, section 2 of the Fourteenth Amendment, adopted soon after the close of the Civil War, was intended to force the southern states either to adopt universal suffrage or be denied representation in Congress. The drafters of the amendment had no aim to require the states to fill any official position by election; rather, the states were to be deterred from arbitrarily excluding blacks from exercising the right to vote. *McPherson v. Blacker,* 146 U.S. 1, 13 S.Ct. 3, 36 L.Ed. 869 (1892); *Reynolds v. Sims,* 377 U.S. 533, 597, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) (Harlan, J., dissenting); *Fincher v. Scott,* 352 F.Supp. 117 (M.D.N.C., 1972), *aff'd,* 411 U.S. 961, 93 S.Ct. 2151, 36 L.Ed.2d 681 (1973). In the instant case plaintiff has alleged no discrimination against blacks or any other discrete minority which would render Florida's judicial merit retention system suspect.

In sum, plaintiff has shown no reason why this Court should award him the relief he demands.

Therefore, it is

ORDERED and ADJUDGED that defendant's motion to dismiss is GRANTED.