472 So.2d 455 (1985)
STATE of Florida, Appellant,
v.
FRONTIER ACRES COMMUNITY DEVELOPMENT DISTRICT PASCO COUNTY, Florida, Appellee.
No. 66449.
Supreme Court of Florida.
June 20, 1985.
James T. Russell, State Atty., and C. Marie King, Asst. State Atty., Sixth Judicial Circuit, Clearwater, for appellant.
Ken van Assenderp of Young, van Assenderp, Varnadoe & Benton, Tallahassee, for appellee.
Terry E. Lewis, Steve Lewis and Robert M. Rhodes of Messer, Rhodes & Vickers, Tallahassee, amicus curiae for The Assn. Of Sp. Districts.
ALDERMAN, Justice.
The State challenges the final judgment of the Circuit Court for Pasco County validating special assessment capital improvement bonds of Frontier Acres Community Development District. Although we find no merit to the State's contention that chapter 190, Florida Statutes (Supp. 1984), is unconstitutional, we reverse the judgment of validation because Frontier Acres Community Development District was not validly created.
On May 1, 1984, pursuant to section 190.005, Florida Statutes (1983), Village Tampa, Inc., filed a petition with the Pasco County Commission to establish Frontier Acres Community Development District. The petition stated that Village Tampa, Inc., was *456 the fee simple owner of 100 percent of the property within the proposed district; set out the external boundaries of the district; designated five initial members of the board of supervisors who would serve until replaced by elected members pursuant to section 190.006, Florida Statutes; set out a proposed timetable for construction; and stated the estimated cost of construction of the proposed services to be $7,000,000. In accordance with section 190.005(1)(b), Florida Statutes (1983), a notice of public hearing to approve the district was published four successive weeks, during which time the 1984 amendments to chapter 190 became effective.
The first meeting of the district's board of supervisors was held on September 7, 1984, at which the district's chairman signed a resolution for the issuance of special assessment capital improvement bonds in an amount not exceeding $16,000,000. The stated purpose of the bond issuance was to finance the construction and acquistion of streets, drainage, and a sewer system, among other things. The resolution pledged the proceeds of the special assessments for bond payment. The district then filed a complaint in circuit court seeking validation of these bonds, and the trial court entered a judgment validating the bonds.
The State contends that chapter 190, Florida Statutes, is unconstitutional as violative of the equal protection clause of the fourteenth amendment because section 190.006(2), Florida Statutes (Supp. 1984), provides for the election of the board of supervisors of a community development district by district landowners on a one-vote-per-acre basis rather than on a one-person, one-vote basis. The powers granted special districts created under the authority of chapter 190, the State argues, invoke the equal protection requirement of one-person, one-vote as established in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). In that case, the United States Supreme Court held that the equal protection clause imposes certain limitations on legislation establishing voters' qualifications. This "one-person, one-vote" principle has been extended in subsequent cases to state political subdivisions exercising general governmental functions. See, e.g., Hadley v. Junior College District, 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970) (election of college trustees); Kramer v. Union Free School District No. 15, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969) (school district elections); Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968) (units of local government).
Frontier Acres responds that the United States Supreme Court has specifically held Reynolds inapplicable to special purpose governmental units such as those created under chapter 190. Frontier Acres argues that the community development districts created under chapter 190 do not exercise the general governmental functions contemplated by Reynolds but rather are similar to those special districts excepted by the United States Supreme Court from Reynolds' applications. Ball v. James, 451 U.S. 355, 101 S.Ct. 1811, 68 L.Ed.2d 150 (1981); Salyer Land Co. v. Tulare Lake Basis Water Storage District, 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973). The district points to the limited grant of statutory powers under chapter 190, the narrow purpose of such districts, and the disproportionate effect district operations have on landowners. We agree.
In Salyer, the Supreme Court upheld the constitutionality of a special district's system for the election of directors under which only landowners could vote. The Court recognized that the district did exercise certain typical governmental powers such as condemning private property and issuing bonds but found that it possessed relatively limited authority. The district provided no general services such as schools, housing, transportation, utilities, or other services normally provided by general municipal bodies. Moreover, the Court found that the district's primary purpose of providing for the acquisition, storage, and distribution of water within that district was relatively narrow as compared to typical *457 governmental bodies. The Court then concluded that the water storage district, by reasons of its special limited purpose and the disproportionate effect of its activities on landowners as a group, is an exception to the rule laid down in Reynolds.
The Supreme Court reaffirmed its position in Ball, which upheld an Arizona state law permitting only landowners to vote for directors of a special district. The Court found that the special district did not exercise crucial government powers. Moreover, the district's water functions, which constituted the primary and originating purpose of the district, were held to be narrow. Thus, the demands of Reynolds were inapplicable.
In the present case, the legislative intent and purpose set forth in section 190.002, Florida Statutes (Supp. 1984), evidence the narrow objective underlying the creation of such districts. Chapter 190 was enacted to address this State's concern for community infrastructure and to serve projected population growth without financial or administrative burden to existing general purpose local governments. § 190.002(1)(a), Fla. Stat. (Supp. 1984). Consistent with this objective, the powers exercised by these districts must comply with all applicable policies and regulations of statutes and ordinances enacted by popularly elected state and local governments. Moreover, the limited grant of these powers does not constitute sufficient general governmental power so as to invoke the demands of Reynolds. Rather, these districts' powers implement the single, narrow legislative purpose of ensuring that future growth in this State will be complemented by an adequate community infrastructure provided in a manner compatible with all state and local regulations. As Justice Powell noted in his concurring opinion in Ball:
Our cases have recognized the necessity of permitting experimentation with political structures to meet the often novel problems confronting local communities. E.g., Holt Civic Club v. Tuscaloosa, 439 U.S. 60, 71-72, 99 S.Ct. 383, 390-391, 58 L.Ed.2d 292 (1978). As this case illustrates, it may be difficult to decide when experimentation and political compromise have resulted in an impermissible delegation of those governmental powers that affect all of the people to a body with a selective electorate. But state legislatures, responsive to the interests of all the people, normally are better qualified to make this judgment than federal courts.
451 U.S. at 373, 101 S.Ct. at 1822 (footnote omitted).
A community development district created under chapter 190 does not exercise general governmental functions. Its activities, however, have a disproportionate effect upon the landowners of the district because they are the ones who must bear the initial burden of the district's costs. Under these circumstances, it is reasonable for the Florida legislature to have concluded that these landowners, to the exclusion of other residents, should initially elect the board of supervisors.[*] We therefore conclude that nothing in the equal protection clause precludes the legislature from limiting the voting for the board of supervisors by temporarily excluding those who merely reside in the district.
Although we hold chapter 190 constitutional, we reverse the trial court's judgment of validation because Frontier Acres was not validly created in accordance with the requirements of chapter 190. Frontier Acres did not include an economic impact statement in its petition for creation as required by section 190.005(1)(a) 8, Florida Statutes (Supp. 1984). Although not required *458 when the district's petition was originally filed, the additional filing requirement was applicable at the time the county commission created Frontier Acres. The 1984 amendment to chapter 190 specifically states in pertinent part:
190.004 Preemption; sole authority. 
(1) This act constitutes the sole authorization for the future establishment of independent community development districts which have any of the specialized functions and powers provided by this act.
(2) This act does not affect any community development district or other special district existing on June 29, 1984; and existing community development districts will continue to be subject to the provisions of chapter 80-407, Laws of Florida.
(Emphasis added.) Thus, any district created after the amendment's effective date must have complied with the new provision.
Frontier Acres concedes that its petition did not include an economic impact statement, but contends that it substantially complied with the statute in that the required elements of an economic impact statement, set forth in section 120.54(2)(a), Florida Statutes (1983), were in fact considered by the county commission before the petition was granted. This contention is not supported by the record. Moreover, we find this statutory requirement must be fully complied with in order to create a valid district. Therefore, we hold the creation of this district invalid under chapter 190.
We find it unnecessary to address any of the appellant's remaining arguments.
Accordingly, we reverse the judgment of the trial court validating this bond issuance.
It is so ordered.
BOYD, C.J., and OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.
ADKINS, J., dissents.
NOTES
[*] We also note that this voting qualification is merely temporary as the chapter specifically provides for general election at specific future dates. Section 190.006(3)(a)2, Florida Statutes (Supp. 1984) provides:

Regardless of whether a district has proposed to levy ad valorem taxes, commencing 6 years after the initial appointment of members or, for a district exceeding 5,000 acres in area, 10 years after the initial appointment of members, the position of each member whose term has expired shall be filled by a qualified elector of the district, elected by the electors of the district.