Mr. Robert E. Huebner General Counsel Downtown Development Authority City of Fort Lauderdale Post Office Box 2427 Fort Lauderdale, Florida 33303
Dear Mr. Huebner:
This is in response to your request for an opinion on substantially the following question:
 WHO IS ELIGIBLE TO VOTE IN A REFERENDUM PURSUANT TO s. 10, ART. III, STATE CONST., ON EXPANDING THE BOUNDARIES OF THE DOWNTOWN DEVELOPMENT AUTHORITY OF THE CITY OF FORT LAUDERDALE, AND PURSUANT TO s. 9(b), ART. VII, STATE CONST., ON APPROVING A MILLAGE RATE THEREFOR?
The Downtown Development Authority of the City of Fort Lauderdale, Florida (hereafter DDA) is an independent special district created by Ch. 65-1541, Laws of Florida, as amended by Chs. 67-1385 and 69-1056, Laws of Florida. Your question relates to the following legislative findings and qualifications for voting found at s. 17 of Ch. 65-1541, supra, as amended by Ch. 67-1385, supra, and Ch. 69-1056, supra.
 (3) Legislative Findings. The Legislature finds that the activities and functions of the Authority are essentially public works and are not concerned with political or governmental purposes. For these reasons the Authority is denied police powers. The right to participate in referenda of the Authority is more of a private or property right than a public or political right. It is the purpose of the Legislature to grant to those who will have to pay the costs of the improvements a voice commensurate with that cost.
 (4) Electors of Downtown: Voting. The referendum shall be conducted with written ballots unless the Board by resolution prescribes the use of voting machines. At the referendum the duly registered owner of each contiguous proprietorship within the downtown shall represent one share and the owner of each share shall be entitled to one vote for each $10,000.00 or fraction thereof, of the non-exempt assessed valuation of the contiguous proprietorship within the downtown, according to the last certified tax assessment roll of Broward County at the time of the referendum. . . .
Your inquiry states that the DDA is considering requesting special legislation which would alter the district's boundaries by adding contiguous lands. Cf., AGO 83-27 (alteration of existing independent district's boundaries not contemplating merger with another district would not appear to amount to establishment or creation of new district for purposes of s. 165.022[2], F.S.). You further indicate that such special legislation may require a referendum election for electors within the existing and expanded boundaries "in order for it to go into effect," and that, pursuant to s. 9(b), Art. VII, State Const., and s. 200.001(8)(e), F.S., electors in such referendum would also be asked to determine the maximum millage rate for the DDA in the expanded district. Note also, s. 200.001(8)(e), providing in pertinent part for authorization of independent special district millage by general law. Cf., s. 165.031(5), F.S. (provisions of s. 200.001[8][e] considered provisions of Ch. 165, F.S.). In light of existing state and federal case law and Attorney General Opinions, you inquire as to who is eligible to vote in such referendum, particularly in view of the fact that there are very few permanent residents within the existing district and the proposed expanded district. Your inquiry further raises certain questions involving interpretation and application of provisions of the Florida Elections Code. Such questions should be submitted to the Division of Elections of the Department of State pursuant to that office's statutory authority to issue advisory opinions. See, s. 106.23(2), F.S.
In AGO 72-126, this office concluded that freeholder limitations and weighted voting based on assessed value of property, in a referendum to create or operate a downtown improvement district, had little, if any, validity under then-existent constitutional standards. Such conclusion was based on the Fifth Circuit's decision in Tornillo v. Dade County School Board, 458 F.2d 194
(5th Cir. 1972), holding that s. 9(b), Art. VII State Const., relating to the levying of taxes, was in conflict with the United States Constitution insofar as it restricted to freeholders only the authority to authorize certain levies of ad valorem taxes, citing to Kramer v. Union Free School District, 395 U.S. 621
(1969); Cipriano v. City of Houma, 395 U.S. 701 (1969); and City of Phoenix v. Kolodziejski, 399 U.S. 204 (1970). Cf., State v. City of Miami Beach, 245 So.2d 863 (Fla. 1971) (freeholder franchise provisions severable from referendum requirement). Moreover, the U.S. Supreme Court had held that the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution was violated by weighted voting. See, Avery v. Midland County, 390 U.S. 474 (1968). Accordingly, at the time AGO 72-126 was issued, there was substantial justification for the view that freeholder limitations and weighted voting based on assessed value were of suspect constitutionality. However, the Court in Avery foreshadowed a subsequent distinction in suggesting that if the county's governing body had been instead "a special-purpose unit of government assigned the performance of functions affecting definable groups of constituents more than other constituents, we would have to confront the question whether such a body may be apportioned in ways which give greater influence to the citizens most affected by the organization's functions." 390 U.S., at 483-484. The Court did not confront that issue until 1973, when it was held that, by reason of the limited purpose of a water storage district and of the disproportionate effect of its activities on landowners as a group, California statutes permitting only landowners to vote in district elections and apportioning votes according to the assessed valuation of land did not violate the Equal Protection Clause. Salyer Land Company v. Tulare Lake Basin Water Storage District, 410 U.S. 719 (1973).
In Salyer, the Court recognized that the district, while exercising certain typical governmental powers, nevertheless possessed relatively limited authority and did not provide the type of general governmental services typical of counties, municipalities, and school systems to which freeholder franchise limitations had previously been held unconstitutional. Thus, this office concluded in AGO 73-260 that the inclusion of "entities such as nonresident corporations within the group to be franchised for elections in a special district, whether they are residents or not, would appear to be consistent with the principles of the federal constitutional opinions in this area" (citing to Salyer) and further concluded that such provision by law "would not appear to exceed the powers granted to the Florida Legislature." And see, State v. Frontier Acres Community Development District Pasco County, 472 So.2d 455 (Fla. 1985), upholding the constitutionality of Ch. 190, F.S., which provides in pertinent part that the board of supervisors of a community development district shall be elected by district landowners on a weighted-vote basis, and concluding that such districts do not exercise general governmental functions and have a disproportionate effect on landowners. Cf., s. 190.011, F.S. (1984 Supp.) (powers of community development districts). Therefore, based upon the foregoing, I am of the opinion that the limitation of the franchise to duly registered owners of contiguous proprietorships within the jurisdiction of a limited purpose special district such as the DDA, and weighted votes based on the assessed valuation thereof, does not violate the Equal Protection Clause of the U.S. Constitution.
However, to the extent that your inquiry indicates that the proposed special legislation may be conditioned upon a referendum "in order for it to go into effect," your attention is directed to Barndollar v. Sunset Realty Corp., 379 So.2d 1278 (Fla. 1979), holding that only "electors" as defined by s. 2, Art. VI, State Const., may vote in special law referenda pursuant to s. 10, Art. III, State Const. The latter provision requires publication of notice of intention to seek enactment of special legislation unless such legislation "is conditioned to become effective only upon approval by vote of the electors of the area affected." Section 2, Art. VI, provides that "[e]very citizen of the United States who is at least twenty-one years of age and who has been a permanent resident for one year in the state and six months in a county, if registered as provided by law, shall be an elector of that county." See also, s. 97.041, F.S. (qualifications to register or vote). But see, AGO's 72-290 and 71-202 (as a matter of law, 26th Amendment to the U.S. Constitution preempts Florida Constitution and statutory law and forbids state action abridging the right to vote of U.S. citizens who are at least eighteen years old). In view of the Barndollar holding that provisions for nonresident freeholder voting in special act referenda are invalid, I am unable to conclude that any person or entity not within the constitutional definition of "elector" contained in s. 2, Art. VI, State Const., as modified by the 26th Amendment to the U.S. Const., may vote in a referendum upon which the effectiveness of special legislation is conditioned pursuant to s. 10, Art. III.
Your inquiry further refers specifically to s. 9(b), Art. VII, State Const., providing in pertinent part that special district millage shall be "authorized" by law approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation." This office concluded in AGO 72-333 that the valid referendum provisions contained in that section to increase millage in excess of the constitutional millage limits required an approving referendum by the qualified electors generally, as opposed to freeholders or taxpayers subject to ad valorem taxation. However, that opinion to a municipality did not address the distinction between general purpose units of local government and those units of local government with limited purpose and disproportionate effect on landowners therein. See also, Tornillo v. Dade County School Board, supra, and Fair v. Fair, 317 F. Supp. 859
(M.D.Fla. 1970), both citing to and relying upon earlier U.S. Supreme Court cases striking down freeholder franchise limitations as applied to general purpose units of local government and holding the freeholder referendum provisions of s. 9(b), Art. VII, violative of equal protection and unconstitutional in the factual context of school district referenda. Note also, the emphasis of the Tornillo court in referring to the constitutional referendum provision permitting a temporary levy of ad valorem taxes by certain local government units to exceed limits specified in s. 9(b), Art. VII. Compare, the provision of s. 9(b), Art. VII, relating to special districts and purporting to require a referendum of freeholders to approve any district millage. Cf., State v. Frontier Acres Community Development District Pasco County, supra. Thus, to the extent that the Supreme Court in Salyer Land Company v. Tulare Lake Basin Water Storage District, supra, subsequently upheld freeholder franchise limitations with respect to a limited purpose unit of local government with disproportionate effect on landowners therein and distinguished prior cases relating to general purpose units of local government such as counties, municipalities, and school systems, and in further view of the presumptive validity of that provision of s. 9(b), Art. VII, relating to special district millage, at least in the absence of clearly applicable judicial precedent to the contrary, I am of the opinion that, as to limited purpose units of local government with disproportionate effect on landowners therein, only electors who are owners of freeholds therein not wholly exempt from taxation are eligible to vote in a referendum to approve a millage authorized by law.
Finally, you have also inquired as to "whether an electorate composed of all qualified electors of the district without regard to freehold interest and all persons who are owners of freeholds in the area" would violate constitutional or statutory provisions. I am not aware of any statutory authority under which the DDA may submit referenda to such a commingled electorate, nor have you directed my attention to such authority.
It is axiomatic that the DDA, as a creation of the Legislature, has no inherent powers, but is limited to the authority and powers granted to it by statute, either expressly or by necessary implication. State ex rel. Greenberg v. Florida State Board of Dentistry, 297 So.2d 628 (1 D.C.A. Fla., 1974), cert. denied,300 So.2d 900 (Fla. 1974). If there is reasonable doubt as to the lawful exercise of a power, such doubt should be resolved against exercise of the power. Edgerton v. International Company,89 So.2d 488 (Fla. 1956). But see, State v. City of Miami Beach, supra, approving city's dual submission of certain questions to freeholders and all electors separately while the Tornillo case was pending. Thus, in the absence of specific statutory authority, I am unable to conclude that the DDA may submit any referenda to a commingled electorate composed of all qualified electors of the district without regard to freehold interest and all persons who are owners of freeholds in the area. Cf., Barndollar v. Sunset Realty, supra. However, I would observe that, in light of the cases and opinions and principles of law discussed herein, it would appear that the Legislature, in enacting any special legislation to expand the boundaries of the DDA, is empowered to prescribe the qualifications for voters in district elections and referenda generally, except with respect to a referendum upon which the effectiveness of special legislation is conditioned, and subject to applicable federal constitutional constraints. See, AGO 73-260. See also, Holley v. Askew, 583 F.2d 728 (5th Cir. 1978) (regulation of state elections is wholly within authority of individual states subject to federal constitutional constraints). Cf., s. 100.241, F.S.
In sum, then, and unless and until legislatively or judicially determined otherwise, I am of the view that only qualified "electors" within the jurisdiction of the Downtown Development Authority of the City of Fort Lauderdale, as the term "elector" is defined by s. 2, Art. VI, State Const., and modified by the26th Amendment to the U.S. Const., are eligible to vote in a referendum on expanding the boundaries of the authority if special legislation authorizing such referendum is conditioned to go into effect only upon such referendum approval pursuant to s. 10, Art. III, State Const.; and that only those electors who are owners of freeholds not wholly exempt from taxation may vote in any referendum to approve special district millage authorized by law pursuant to s. 9(b), Art. VII, State Const., for limited purpose units of local government with disproportionate effect on landowners therein. However, it would appear that the Legislature is authorized to prescribe voter qualifications for other district elections, although I find no existent statutory authority for a commingled electorate composed of all qualified electors and freeholders.
Sincerely,
Jim Smith Attorney General
Prepared by:
Kent L. Weissinger Assistant Attorney General