Mr. Keith W. Bricklemyer Lake St. Charles Community Development District Attorney 111 East Madison Street, Suite 2400 Tampa, Florida 33602-4708
Dear Mr. Bricklemyer:
You have asked for my opinion on substantially the following questions:
1. Is the Lake St. Charles Community Development District authorized to enter into a contract with a cable franchisee for that franchisee to provide a combination of services to include basic cable television, community recreation information, and security monitoring for the residents of the district?
2. If the answer to Question One is in the affirmative, is the Lake St. Charles Community Development District authorized to offset its costs by selling air time to commercial advertisers on the cable services provided to the residents?
In sum:
1. Providing cable television services to the residents of the Lake St. Charles Community Development District is outside the scope of authority for the district, and the district may not enter into a contract with a cable television franchisee to provide such services to the residents of the district.
2. In light of the answer to Question One, no response to Question Two is necessary.
The Lake St. Charles Community Development District is a local unit of special-purpose government created pursuant to Chapter 190, Florida Statutes. The district was created in 1995 by a Hillsborough County ordinance[1] as required by section190.005(1), Florida Statutes. The ordinance creates the district and authorizes it to "exercise the powers described and authorized in Sections 190.011 and 190.012(1), (2)(a), (b), (d), (e) and (f) and (3), Florida Statutes."[2]
According to your letter, the district is interested in entering a contract with a cable television franchisee to provide cable television for the residents of the district. This contract would include basic cable service, community recreation information, and security monitoring. You state that the proposed cable television service would broadcast local recreational, educational, and cultural programs to the residents of the district. In addition, the district would install monitoring cameras at the project entrance that would broadcast to the residents on one of the channels provided by the cable service.
Chapter 190, Florida Statutes, is the "Uniform Community Development District Act of 1980."[3] In adopting the act the Legislature expressed its concern that there was a need for uniform procedures in state law to authorize the establishment of community development districts to provide for the planning, management, and financing of capital infrastructure.[4]
Section 190.011, Florida Statutes, provides the general corporate powers that community development districts may exercise, including the authority to contract, apply for retirement coverage for employees, borrow money and adopt administrative rules for the district. Section 190.012, Florida Statutes, makes provision for special powers of these districts.
Section 190.012(1) recognizes that a community development district may finance, establish, construct, equip, operate, and maintain systems and facilities for basic infrastructures of the district. These basic infrastructures may include water management and control facilities, water supply, sewer, and wastewater management systems, bridges or culverts within the district, and district roads.[5]
Subsection (2) of section 190.012, read together with the Hillsborough County ordinance, authorizes the Lake St. Charles Community Development District to operate and construct:
(a) Parks and facilities for indoor and outdoor recreational, cultural, and educational uses. (b) Fire prevention and control, including fire stations, water mains and plugs, fire trucks, and other vehicles and equipment.
* * *
(d) Security, including, but not limited to, guardhouses, fences and gates, electronic intrusion-detection systems, and patrol cars, when authorized by proper governmental agencies; except that the district may not exercise any police power, but may contract with the appropriate local general-purpose government agencies for an increased level of such services within the district boundaries. (e) Control and elimination of mosquitoes and other arthropods of public health importance. (f) Waste collection and disposal.
The district is also authorized by subsection (3) "[t]o adopt and enforce appropriate rules following the procedures of chapter 120[.]"
While the primary purpose for the establishment of community development districts is to provide for the planning, management, and financing of capital infrastructure, the exercise of the special powers set forth in section 190.012, Florida Statutes, is authorized to facilitate accomplishment of this primary task. Although the term "infrastructure" is not specifically defined for purposes of Chapter 190, Florida Statutes, similar definitions in other statutory sections may be useful in determining the scope of the term.[6] The term "infrastructure" is defined in section212.055(2)(d)2., Florida Statutes, relating to the imposition of local government infrastructure surtaxes. "Infrastructure" is defined in that section to mean:
a. Any fixed capital expenditure or fixed capital outlay associated with the construction, reconstruction, or improvement of public facilities which have a life expectancy of 5 or more years and any land acquisition, land improvement, design, and engineering costs related thereto. b. A fire department vehicle, an emergency medical service vehicle, a sheriff's office vehicle, a police department vehicle, or any other vehicle, and such equipment necessary to outfit the vehicle for its official use or equipment that has a life expectancy of at least 5 years.
Thus, "infrastructure" may be understood to refer to certain projects, facilities and equipment that make up the basic framework of public facilities. These would include, as defined by Chapter 190, Florida Statutes, sewer systems, water management and control facilities, and water systems.[7]
A review of the goals of the Legislature in enacting the Uniform Community Development District Act of 1980 and a review of the types of projects that may be undertaken by these districts leads me to conclude that providing cable television service is not included within the scope of authority of the Lake St. Charles Community Development District.
As the Florida Supreme Court recognized in State v. Frontier Acres Community Development District Pasco County, "Chapter 190 was enacted to address this State's concern for community infra-structure[.]"[8] The Court went on to note that:
Consistent with this objective, the powers exercised by these districts must comply with all applicable policies and regulations of statutes and ordinances enacted by popularly elected state and local governments. . . . [T]hese districts' powers implement the single, narrow legislative purpose of ensuring that future growth in this State will be complemented by an adequate community infrastructure provided in a manner compatible with all state and local regulations.[9]
Thus, the Court acknowledged that community development districts created pursuant to Chapter 190, Florida Statutes, are authorized to accomplish special, limited purposes and do not possess the broader home rule powers that municipalities and counties have in Florida.
Special districts have limited authority and may only exercise those powers that are expressly granted to them by law or those that are necessarily implied because they are essential to carry into effect those powers expressly granted.[10] As authority for the development district to provide cable television services you rely on a series of cases dealing with the City of Niceville's proposal to create a municipally owned cable television station.[11] Municipalities, unlike special districts, possess home rule powers and, as stated in section 166.021, Florida Statutes, municipalities "may exercise any power for municipal purposes, except when expressly prohibited by law."[12] Such is not the case with special districts, which are strictly limited to the exercise of those powers expressly granted to them by the Legislature. Thus, a municipality's power to develop a cable television service is not equivalent to the power of a community development district to provide such a service.
Therefore, it is my opinion that the Lake St. Charles Community Development District is not authorized by the provisions of Chapter 190, Florida Statutes, to enter into a service contract with a cable franchisee to provide cable television services to the residents of the district.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] Hillsborough County Ordinance No. 95-30.
[2] Id. s. 3.
[3] Section 190.001, Fla. Stat. (1995).
[4] Section 190.002(1)(a), Fla. Stat. (1995).
[5] Section 190.012(1)(a)-(e), Fla. Stat.
[6] See, e.g., State v. Hagan, 387 So.2d 943, 944 (Fla. 1980), for the proposition that in the absence of a statutory definition, consideration may be given to the case law or related statutory provisions which define the term.
[7] See, s. 190.003(19), (20), and (21), Fla. Stat. (1995), defining "[s]ewer system," "[w]ater management and control facilities," and "[w]ater system," respectively.
[8] 472 So.2d 455 at 457 (Fla. 1985).
[9] Id.
[10] Forbes Pioneer Boat Line v. Board of Com'rs of Everglades Drainage District, 82 So. 346 (Fla. 1919).
[11] See, Warner Cable Communications, Inc. v. City of Niceville,520 So.2d 245 (Fla. 1988), cert. den. 488 U.S. 825 (1988), relating to bond validation; Byrd v. City of Niceville,541 So.2d 696 (Fla. 1st DCA 1989), rev. den. 548 So.2d 662 (Fla. 1989); Warner Cable Communications, Inc. v. City of Niceville,911 F.2d 634 (11th Cir. 1990), reh. den. 920 F.2d 13 (1990), cert. den.501 U.S. 1222 (1991) dealing with U.S. constitutional claims of a violation of the first amendment; Warner Cable Communications, Inc. v. City of Niceville, 581 So.2d 1352 (Fla. 1st DCA 1991).
[12] Section 166.021(1), Fla. Stat. (1995).