Dear Ms. Larrinaga:
On behalf of the Boards of Supervisors of the Westchase Community Development District and the Westchase East Community Development District, you ask substantially the following question:
If the Westchase Community Development District and the Westchase East Community Development District merge pursuant to section 190.046(3), Florida Statutes, who is eligible to vote for the board of supervisors for the merged district?
According to your letter, the Westchase Community Development District (CDD), consisting of 749 acres, and the Westchase East Community Development District (CDD East), consisting of 972 acres, were created in 1991 and 1995, respectively, by ordinance.[1]
Chapter 190, Florida Statutes, is the "Uniform Community Development District Act of 1980."[2] In adopting the act, the Legislature determined that there was a need for uniform procedures in state law to establish such districts to provide for the planning, management and financing of capital infrastructure.[3] Section 190.046, Florida Statutes, which provides for the termination, contraction, or expansion of a community development district, states in subsection (3):
"The district may merge with other community development districtsupon filing a petition for establishment of a community developmentdistrict pursuant to s. 190.005 or may merge with any other special districts upon filing a petition for establishment of a community development district pursuant to s. 190.005. The government formed by a merger involving a community development district pursuant to this section shall assume all indebtedness of, and receive title to, all property owned by the preexisting special districts. Prior to filing said petition, the districts desiring to merge shall enter into a merger agreement and shall provide for the proper allocation of the indebtedness so assumed and the manner in which said debt shall be retired. The approval of the merger agreement by the board of supervisors elected by the electors of the district shall constitute consent of the landowners within the district." (e.s.)
Section 190.005(1), Florida Statutes, provides that "[t]he exclusive and uniform method for the establishment of a community development district with a size of 1,000 acres or more shall be pursuant to a rule, adopted under chapter 120 by the Florida Land and Water Adjudicatory Commission, granting a petition for the establishment of a community development district." The statute sets forth the various requirements for the petition, including "[a] designation of five persons to be the initial members of the board of supervisors, who shall serve in that office until replaced by elected members as provided in s.190.006."[4] (e.s.)
Pursuant to section 190.006(2), Florida Statutes,
"(a) Within 90 days following the effective date of the rule or ordinance establishing the district, there shall be held a meeting of the landowners of the district for the purpose of electing five supervisors for the district. . . .
(b) At such meeting, each landowner shall be entitled to cast one vote per acre of land owned by him or her and located within the district for each person to be elected. A landowner may vote in person or by proxy in writing. . . . The two candidates receiving the highest number of votes shall be elected for a period of 4 years, and the three candidates receiving the next largest number of votes shall be elected for a period of 2 years, with the term of office for each successful candidate commencing upon election. The members of the first board elected by landowners shall serve their respective 4-year or 2-year terms; however, the next election by landowners shall be held on the first Tuesday in November. Thereafter, there shall be an election of supervisors for the district every 2 years in November on a date established by the board and noticed pursuant to paragraph (a). . . ."
If the board of supervisors proposes to levy ad valorem taxing power as authorized by section 190.021, Florida Statutes, the board must call an election at which the members of the board of supervisors will be elected by the qualified electors of the district.[5] Regardless of whether a district has proposed to levy ad valorem taxes, however, commencing six years after the initial appointment of members for a district not exceeding 5,000 acres in area, the position of each member whose term has expired shall be filled by a qualified elector of the district, elected by the qualified electors of the district.[6]
You suggest that the qualified electors should elect the board of supervisors of the merged district immediately, rather than the landowners, since the merged district is substantially developed and contains a number of registered voters that have actively participated in the CDD and the CDD East prior to merger. While this office recognizes your concerns, an examination of the statutes do not support such a conclusion.
A review of Chapter 190, Florida Statutes indicates that the statutes consider the merger of two community development districts as the creation of a new district. As noted above, section 190.046(3), Florida Statutes, requires community development districts seeking to merge to file a "petition for the creation of a new district" pursuant to section190.005, Florida Statutes. In contrast, for example, section 190.046(1), Florida Statutes, relating to the contraction or expansion of a district, only states that the petition to contract or expand the new district shall contain the same information required by section190.005(1)(a)1. and 8., Florida Statutes, unless the petition to amend the boundaries of the district exceeds the amount of land specified in section 190.005(1)(f), Florida Statutes. In such a case, the petition to expand the boundaries shall be considered a petition to establish a new district and shall follow all of the procedures specified in section190.005, Florida Statutes.[7]
In addition, section 190.046(2), Florida Statutes, governs the termination of community development districts. It provides that a district "shall remain in existence unless[,]" among other things, "[t]he district is merged with another district as provided in subsection (3)[.]"[8] Such language reflects a legislative intent that upon merger, the former community development districts no longer exist and a new district has been created.[9]
Section 190.005, Florida Statutes, provides for the election of a board of supervisors "as provided in" section 190.006, Florida Statutes. As discussed supra, section 190.006 provides for the election of the initial board of the community development district by the landowners. Only if the board intends to levy ad valorem taxes or six years after the creation of the new community development district, whichever occurs first, does section 190.006 provide for the election of the board of supervisors of a district not in excess of 5,000 acres by the qualified electors.
Since the statutes appear to treat the merger of community development districts as a termination of the former districts and the creation of a new community district, the provisions of section 190.006, Florida Statutes, relating to the election of the initial board of the new district would appear to control. It is the rule of statutory construction that, when the Legislature prescribes the method of accomplishing some task, that method must be observed.[10]
Accordingly, I am of the opinion that if the Westchase Community Development District and the Westchase East Community Development District merge pursuant to section 190.046(3), Florida Statutes, the landowners of the district are eligible to vote for the initial board of supervisors for the merged district.
[1] See s. 190.005(2), Fla. Stat., stating that "[t]he exclusive and uniform method for the establishment of a community development district of less than 1,000 acres in size shall be pursuant to an ordinance adopted by the county commission of the county having jurisdiction over the majority of land in the area in which the district is to be located granting a petition for the establishment of a community development district[.]"
[2] See s. 190.001, Fla. Stat., providing the short title of the act.
[3] Section 190.002(1)(a), Fla. Stat. And see State v. Frontier AcresCommunity Development District Pasco County, Florida, 472 So. 2d 455
(Fla. 1985) (Chapter 190 was enacted to address this State's concern for community infrastructure and to serve projected population growth without financial or administrative burden to existing general purpose local governments).
[4] Section 190.005(1)(a)3., Fla. Stat. One of the conditions set forth in s. 190.005(1)(a) is that the written consent of the landowners is required. See s. 190.005(1)(a)2., Fla. Stat. Section 190.046(3), Fla. Stat., however, provides that the approval of the merger agreement by the board of supervisors elected by the electors of the district "shall constitute consent of the landowners within the district."
[5] Section 190.006(3)(a)1., Fla. Stat. The election is to be held in conjunction with a primary or general election unless the district bears the cost of a special election with the members of the board serving for a term of four years, except that, at the first such election, three members shall be elected for a period of four years and two members shall be elected for a period of two years. All elected board members must be qualified electors of the district. Id.
[6] Section 190.006(3)(a)2.a., Fla. Stat. The statute contains specific provisions for districts not exceeding 5,000 acres which do not have 250 qualified voters. However, according to your letter, the current CDD has 2,593 qualified voters and the CDD East contains 3,853 qualified voters.
[7] Section 190.005(1)(g), Fla. Stat.
[8] Section 190.046(2)(a), Fla. Stat.
[9] See Staff Analysis on House Bill 1776 (enacted as Ch. 80-407, Laws of Fla.), Committee on Community Affairs, House of Representatives, dated May 19, 1980, stating that the procedures under which such districts would operate include "[m]ethods of terminating the district by merger. . . ." A similar statement is contained in the Senate Staff Analysis and Economic Impact Statement for Senate companion bill, Senate Bill 1326, dated May 25, 1980.
[10] Alsop v. Pierce, 19 So. 2d 799, 805-806 (Fla. 1944) (When the controlling law directs how a thing shall be done, that is, in effect, a prohibition against its being done in any other way); Dobbs v. Sea IsleHotel, 56 So. 2d 341, 342 (Fla. 1952); Thayer v. State, 335 So. 2d 815,817 (Fla. 1976).