Dear Mr. Chiumento:
On behalf of the Board of Supervisors of the Hammock Dunes Community Development District, you ask substantially the following questions:
1. Is the community development district required to conduct the elections of its members only during the "general election" as defined in section 97.021(14), Florida Statutes?
2. If so, is the district authorized to extend or reduce the term of its members by resolution in order to comply with this requirement?
In sum:
1. The community development district is required to conduct the elections of its members by the residents of the district during the general election as that term is defined in section 97.021, Florida Statutes, i.e., on the first Tuesday after the first Monday in November in the even-numbered years.
2. The board by resolution may extend or reduce the terms of the current board in order to bring the district into compliance with this requirement.
You state that the Hammock Dunes Community Development District was created in 1985 pursuant to section 190.005, Florida Statutes. While the district has previously held elections to fill the staggered terms of the board of supervisors in odd-numbered years, the Flagler County Supervisor of Elections has recently advised the board that district elections must take place only at the "general election" held in even-numbered years.
As your questions are interrelated, they will be answered together.
Chapter 190, Florida Statutes, is the "Uniform Community Development District Act of 1980."[1] In adopting the act, the Legislature determined that there was a need for uniform procedures in state law to establish such districts to provide for the planning, management, and financing of capital infrastructure.[2]
Pursuant to section 190.006(2), Florida Statutes,
"(a) Within 90 days following the effective date of the rule or ordinance establishing the district, there shall be held a meeting of the landowners of the district for the purpose of electing five supervisors for the district. . . .
(b) At such meeting, each landowner shall be entitled to cast one vote per acre of land owned by him or her and located within the district for each person to be elected. . . . The members of the first board elected by landowners shall serve their respective 4-year or 2-year terms; however, the next election by landowners shall be held on the first Tuesday in November. Thereafter, there shall be an election of supervisors for the district every 2 years in November on a date established by the board and noticed pursuant to paragraph (a). . . ."
The statute, however, contemplates that the election of board members will transition from the landowners to the qualified electors of the community development district.[3] You have advised this office that the district held its first election of board members by qualified electors in 1997. Section 190.006(3)(a)2.c., Florida Statutes, provides:
"Once a district qualifies to have any of its board members elected by the qualified electors of the district, the initial and all subsequent elections by the qualified electors of the district shall be held at the general election in November. The board shall adopt a resolution if necessary to implement this requirement when the board determines the number of qualified electors as required by sub-subparagraph d., to extend or reduce the terms of current board members." (e.s.)
While the term "general election" is not defined in section 190.006, Florida Statutes, the statute provides that "[e]lections of board members by qualified electors held pursuant to this subsection shall be nonpartisan and shall be conducted in the manner prescribed by law for holding general elections."[4] Section 97.021(14), Florida Statutes, defines "General election" for purposes of the Florida Election Code, Chapters 97-106, Florida Statutes, to mean "an election held on the first Tuesday after the first Monday in November in the even-numbered years, for the purpose of filling national, state, county, and district offices and for voting on constitutional amendments not otherwise provided for by law."
The reference would therefore appear to refer to a "general election" as that term is used for purposes of the Florida Election Code, i.e., an election held on the first Tuesday after the first Monday in November in even-numbered years. An examination of the legislative history appears to support such a conclusion. The staff analysis discussing a provision containing the same language as is currently contained in section 190.006(3)(c), Florida Statutes, discusses the Senate's Interim Project Report 2004-121 prepared by the Senate Comprehensive Planning Committee which included a recommendation to amend section 190.006, Florida Statutes, to implement the consensus changes, as identified in the report, relating to community development district election provisions.[5]
The interim report noted that was no explicit authority to hold a special election, conducted by the county Supervisor of Elections, for residential elections although a number of respondents interpreted section 190.006 "to allow or require a special election for residential elections in odd-numbered years, and this creates an additional problem: the costs of special elections are the responsibility of the district."[6] The report noted that in order to avoid the cost of a special election, a number of options were suggested by respondents. The report itself suggests that the Legislature "amend s. 190.006, F.S., to bring the [Community Development District] CDD election cycle in-line with the general election."[7]
In light of the above, it appears that the Legislature intended that the election of the board be held at the general election as that term is defined in section 97.021(14), Florida Statutes, for the Florida Election Code. It further appears that the Legislature intended that the board in making such a transition have the authority to reduce or extend the terms of the board members in office at the time the transition is made. Since the Hammock Dunes Community Development District has been conducting elections of board members by residents in odd numbered years, it appears appropriate that the board, by resolution, either extend or reduce the current board members term to bring the district elections in compliance with section 190.006(3)(c), Florida Statutes.
Sincerely,
 Bill McCollum Attorney General
BM/tjw
[1] See s. 190.001, Fla. Stat., providing the short title of the act.
[2] Section 190.002(1)(a), Fla. Stat. And see State v. FrontierAcres Community Development District Pasco County, Florida,472 So. 2d 455 (Fla. 1985) (Ch. 190 was enacted to address this State's concern for community infrastructure and to serve projected population growth without financial or administrative burden to existing general purpose local governments).
[3] See s. 190.003(17), Fla. Stat., defining "Qualified elector" as "any person at least 18 years of age who is a citizen of the United States, a legal resident of Florida and of the district, and who registers to vote with the supervisor of elections in the county in which the district land is located." And see s. 190.006(3)(a)1., Fla. Stat., setting forth when such a transition must occur.
[4] Section 190.006(3)(b), Fla. Stat.
[5] See Senate Staff Analysis on CS/SB 1392, 2004 regular session, dated March 12, 2004 (Staff Analysis). Although CS/SB 1392 died during the legislative session, identical language relating to the election of board members in "the general election in November" and to the board's authority to adopt a resolution to extend or reduce current board members to implement this requirement was added to CS/CS/CS/SB 1184 (Ch. 2004-345, Laws of Fla.), which created the current s. 190.006(3)(c), Fla. Stat.
[6] Senate's Interim Project Report 2004-121, p. 5, available online at: http://www.flsenate.gov/data/Publications/2004/Senate/reports/ interim_reports/pdf/2004-121ca.pdf.And see Staff Analysis, p. 3, Chart 1, stating:
"If the 1st Resident Election is scheduled in an odd-numbered year, some districts have held special elections, the cost of which are paid by the district. Others have delayed the election until the General Election, stating that there is no explicit authority to hold a special election for Resident Elections; the effect of this is to extend the Landowner Supervisor's terms up to an additional year."
[7] Id. at 8.